Mr. Love, when you're ready. I'll start with how the contract bears on the conducted issue in this case and then address how the district court ought to have treated the injunctive relief clause. RMS's business is built on its contracts with banking partners like Commerce. Those contracts allow the banks to provide a white-labeled solution, RMS's platform, provided to these healthcare providers who then can use it for processing their healthcare data. Those contracts require significant protections for RMS. The RMS platform that the banks are to provide this service to these healthcare providers, it's not public. It is a proprietary platform with confidential features that are not simply available for anyone to inspect or use themselves to figure out how they work. Commerce could access and use the RMS platform only pursuant to the restrictions of the contract and only for the purposes of accomplishing what was supposed to be accomplished in the party's relationship. Now, RMS brought this case because Commerce Bank abused that access. It misappropriated RMS's confidential information and trade secret information to build a copycat platform to replicate RMS's platform, to replace RMS, all the while concealing that from RMS. And the reason why they were lying to RMS about this is because they needed to prolong their access to the RMS platform while they built their own for as long as possible, because they were using RMS's platform as a validation tool, trying to get their platform to match exactly what RMS was doing before they could swap it out and move all their customers over. Now, there are a long line of cases in federal courts across the country recognizing that injunctive relief is appropriate in cases involving the misappropriation of confidential and trade secret information, because full quantification of damages for misconduct like that can be very, very difficult. But the parties here... In those other cases, has the other parties, the party offending, has the offending party stopped the conduct, voluntarily ended the conduct? So there are certainly some cases where a party did do that. One of those was the Sanborn case where the party completely ceased the misconduct. That's not the case here. The core misconduct at issue here is the use of the platform to provide reconciliation services for customers. Commerce is still doing that. The customers that it moved over from the RMS platform toward the end of 2024 and the beginning of 2025 are still on the platform. But they're not expanding it at all, right? That's what the district court's talking about, no expansion. That's correct. And I think the way I would address that is there is a big difference between ceasing the misconduct at issue and simply saying, there are ways I could make this worse. And for now, I won't do those. That's what injunctions do. They stop the future. But the injunction would stop the current use of the platform. The injunction would stop them from servicing the customers that they moved from our platform to theirs. So there is ongoing misconduct that our injunction would have stopped that they admit is still going on. What the district court treated as remedial was them saying, well, there's certain things we could do to make it worse that we'll agree. I mean, they haven't actually agreed. They just said, at least for now, we're not doing it. So going back to the injunctive relief clause, the parties made this much easier than some of those other cases because the parties made a specific agreement to address three particular kinds of breaches of contract, including those involving confidential and proprietary information, breaches involving intellectual property. The parties agreed those breaches would merit injunctive relief. And the word in the injunctive relief clause is shall, the party shall be entitled to it. Yeah, but you can't contract us into court into being compelled to issue injunctive relief. It's still equitable relief that rests on irreparable harm, right? That's absolutely the case, Your Honor. But the issue is the district court. The district court's opinion reflects the kind of analytic errors in assessing harm that the parties intended to foreclose by this agreement. Well, did you not make this argument in the district court? The other side spends a long time saying you didn't argue this point in the district court. So we did argue this point in the district court that the injunctive relief clause should have been given significant and heavy weight. They have a separate argument about the role of the limitation of liability clause that they're saying wasn't raised before. They have a different argument that they also say wasn't raised that involves something called segregation logic. They're not arguing that the central argument we're making here wasn't made before the district court. It absolutely was. This was point one in our briefing in the district court on the propriety of injunctive relief on the irreparable harm factor. We absolutely made the argument. And what happened is the district court observed that the injunctive relief clause exists, but then he moved on and the rest of his analysis is not reconcilable with the injunctive relief clause. He treats the harm as too speculative or not yet sufficiently disastrous. The point of the clause was that the parties agreed that the risk of harm for these kind of breaches was hard to quantify, that monetary damages would not be adequate, and injunctive relief ought to be available. And that contractual agreement should have ensured that RMS would not lose protection for its intellectual property or the competitive advantage of its platform. But the district court allowed that to happen because it gave the injunctive relief clause no weight at all. Now, I want to explain what we believe the district court ought to have done, and it should start with the language of the clause. We're not arguing, and the contract didn't provide that somehow we just agree injunctive relief for any breach. That wasn't what it was. It's very narrowly tailored to three specific kinds of breaches. The district court should have then compared that to the allegations and really the evidence we showed on the likelihood of success on the merits. The breaches that are alleged here are squarely within this injunctive relief clause. They involve misappropriation of confidential information. They involve trade secret misappropriation. And then we've got Commerce's admission. Now, we are not arguing that the admission is the only thing that we need. We're not arguing that their admission, that injunctive relief is appropriate for a breach like this, is entirely dispositive. But it played no role at all, and that's an error. It is clearly Commerce's position when the contract was signed that these types of harms flowing from these breaches would not be adequately remedied by damages, and yet they argued just the opposite before the district court, and the district court decided that it would substitute its own judgment entirely for what the parties had agreed. Mr. Love, whether or not the contract contains a suggestion that an injunction is appropriate, isn't it necessary to also make a finding of irreparable harm? Yes, so I'll... What's our standard of review for a finding of irreparable harm? I believe the standard review would be an abuse of discretion, Your Honor, but the... Well, isn't a finding of irreparable harm more of a fact question that might be clear error? It may be clear error, Your Honor, but I think the issue is, what is the district court supposed to do with the irreparable harm with the injunctive relief clause? Is it permissible as a matter of law to interpret this contract and then simply set it aside? My point is, if it finds there's no irreparable harm, I'm not sure how much that matters. I mean, do you disagree with that? I do, Your Honor, and let me explain why. I think what the contract and the law that we've provided requires is assessing the evidence of harm with the contractual provision alongside. The word that gets used is bolster or augment. It can't simply be done in isolation. The injunctive relief clause must play a role, and the right kind of role for it to play... One example is the North Atlantic title case. You look at the nature of the harm that's occurred, and then you look at the contract provision that's at issue, and if you've got the kind that we traditionally recognize as irreparable, in that case, just like ours, it involved confidential information getting out and being taken and misused by the other party. That's recognized as a source of irreparable harm. A trade secret being misused has been recognized standing alone as a basis for a finding of irreparable harm, and then you take that together with the contractual agreement by the wrongdoer that that kind of breach would irreparable harm that could not be adequately remedied by damages, and then you make that finding. So in addition to that, though, it's actually undisputed here that there were economic harms that had occurred because of this breach. So all the cases they cite where someone had offered an injunctive relief clause and said, that's it, we don't need anything else, that's irreparable harm, that's not our case. We'll start first with the customers. There was a set of customers that were on our platform. We were receiving revenues by providing services to those customers, and they transitioned those customers away to this copycat platform. That is a stream of revenue that is gone. That is economic harm. Now, you can have a separate argument about whether that is fully quantifiable on damages, but those are customer relationships that are disrupted. They've now been disrupted for over a year. There are streams of revenue that may grow with those customers, that may extend beyond the time of trial, even for that harm alone, whether it's fully quantifiable as damages. We've argued and our expert put in evidence that it was not. So we have economic harm tied to the breach that's happening. It's of a nature that is recognized to be irreparable. Additionally, we've got a new competitor on the market. They created a platform that was intended to be a copy of RMS's platform that would reproduce exactly the same results for these customers. That is a kind of competitive harm that is starkly different from some run-of-the-mill case about, well, now you've got a new competitor. We now face a competitor of a platform that was built to do exactly what our technological approach was, and that is a distinct, concrete economic harm that is happening in this case. Weighing that evidence together with what our economic expert explained about the nature of those future harms, the right result, we believe the only result that would not be an abuse of at least the irreparable harm portion satisfied. We'd ask that the court vacate and remand with instructions to apply that law properly. I do have one question. Go back to the injunctive relief clause. You've made the argument a couple of times that Judge Boo never considered it at all. Well, actually, at page five, he says he considered it. He just says, I don't find it to be dispositive. It's kind of more of a failure to work argument than it is that it wasn't considered. A lot of times when we look at district court opinions, we say that explanation isn't exactly what we would have done or what we'd like to see, but it's adequate for us to move forward because it does indicate that he gave some consideration away to it. Why would that be the wrong thing to do in this case? I think what we have here is the district court showed work that is directly contrary to the on page six of the opinion, which is just after the page, the injunctive relief clause, quoting a case where there's an adequate remedy at law, a preliminary injunction is not appropriate. As a general principle, that is true. But saying that in this case, where in just the prior page, we have the party's agreement, commerce's agreement, a remedy at law for a breach will not be adequate. And so we have the court applying law that directly contradicts what the agreed to. And the rest of the opinion is indistinguishable from a case that has no injunctive relief clause. And I think that is really, it's not a failure to show work. It is treating this as if it doesn't exist and is entitled to no weight. And absent any other questions, I'll reserve the remainder of my time. Good morning, your honors. John Hutchins from Banner Whitcoff representing commerce and may it please the court. The district court properly considered RMS's evidence of alleged irreparable harm and found that RMS did not meet its burden. The court did not clearly err in doing so. Now, RMS accuses the district court of making certain legal errors, but these are nowhere found in the court's opinion. For instance, the district court did not with respect give no weight to the contract between RMS and commerce. The court, as was noted, expressly considered the contract and properly gave it non-dispositive weight. It was because RMS's other evidence of alleged irreparable harm, because that other evidence was deficient, the court properly denied the extraordinary relief of preliminary injunction. And this is completely consistent with the law as to how injunctive relief clauses should be handled. In the Brideau case, that was a covenant not to compete that had allegedly been violated. So the move-in was facing a new competitor that it said it shouldn't have. There, in addition to the injunctive relief clause, the move-in argued that there would be irreparable harm because if this franchisee was allowed to set up and compete in contravention to the contract, other franchisees would be allowed to do so. The court found that that was speculative irreparable harm and did not err in doing so and thus denied the injunction. It was not forced to grant the injunction because of the injunctive relief clause. Dominion video is even more instructive because in that case, there was an exclusive rights clause in a contract that had allegedly been violated. Thus, again, facing a competitor that the move-in said I shouldn't have to face. There, unlike RMS, they also argued that there would be irreparable harm because their very business was threatened, their existence was threatened, and that damages could not be The district court found that all of those other arguments for irreparable harm were unconvincing and speculative. He then granted the injunction based on the injunctive relief clause, and he was overturned because the appellate court held that since there was no other irreparable harm, the judge had found all the other arguments of harm to be speculative and unconvincing, as did the district court here. He could not grant the injunction on the basis of the injunctive relief clause. In other words, it would have been error given the factual findings the district court made as to RMS's unconvincing and speculative claims of irreparable harm. It would have been error for the judge to do what RMS is telling you he should have done. That's the Dominion video case. Now, I'd like to talk a little bit about why the district court did not err in finding that the irreparable harm arguments RS made were, in fact, speculative or unconvincing. Now, there was a mention of economic harm occurring. There were customers that were on RMS's platform, customers interacting with commerce, by the way, because commerce is the only forward-facing entity. The customers are using commerce's platform, once powered by RMS. Some are now using a commerce platform, now powered by commerce, always branded commerce. Under the contract between RMS and commerce, the amount of revenue RMS receives is set out in price schedules. One is at the appendix at 316. So, yes, there are customers on the new commerce platform that used to be powered by RMS. The amount of value, economic value, that that loss represents is readily calculable and thus cannot be irreparable harm. And the district court certainly did not err in saying this is your garden variety lost profits case that can be calculated at trial. As to any alleged loss of reputation, you heard this was a white label platform. That means it was branded commerce's branding, not RMS's branding. And the only evidence of confusion or loss of reputation that is in the is one instance of a customer calling RMS for a password reset. It was fair for the district court to find that when customers are using a platform that has always been associated with commerce and not associated with RMS, that there's no reputational harm or it's too speculative for RMS to meet its burden. And the UnitedHealthcare case is informative because of how different it is factually. In UnitedHealthcare, there were competing medical platforms for prescriptions and health records for patients who wanted their prescriptions filled. AARP sponsored those platforms. AARP was the forward-facing entity. And the court in that case found that there was a likelihood of reputational harm to AARP because there were over 36,000 instances where customers did not get their prescriptions filled because pharmacists were concerned about data not matching up, history data, patient data not matching up in these platforms. And that those customers would associate those 36,000 instances of not getting their prescriptions filled with AARP because AARP was the front face of the platform. Here, RMS was never the front face of this platform. And here, you have one instance of someone calling about a password reset. Well, you haven't mentioned so far in your argument, in your brief, you say several times that they didn't argue certain points to the district court. It's relatively a theme of some of your arguments. Particularly on the injunction relief clause, you say was not argued in the district court. Tell me, you heard what the other side said, I asked them the same thing. Tell me what you're saying there about what was not argued in the district court. Yes. First of all, this new legal standard that a district court has to give significant weight to an injunctive relief clause was never raised to the district court. That was created on appeal. And there's certainly been no case that I'm aware of that's ever held that an relief clause has to be treated differently than any other evidence or given significant weight, anything other than non-dispositive weight. What we say in our brief is their argument is tantamount to an argument that the clause has to be given dispositive relief because the only reason they say the court gave it no weight is because the court ruled against them. But the defendant, the movement in Bordeaux could have made the same argument. They said, I lost my injunction, but the contract says I'm entitled to an injunction. Dominion video, same result. The movement could have made the same exact argument, but that's just another way of saying the court has to be co-opted by a contract into issuing an injunction the court wouldn't otherwise think is justified, which every court has said is not the law and is the wrong approach. You saying they argued to the district court that it was dispositive? No, I'm what I'm saying is their argument on appeal is tantamount to an argument that it has to be treated as dispositive. Well, Mr. Love said point one of his brief to the district court was this question. So there's something unless he's not telling me the truth, something has to be. Oh, no, he absolutely they absolutely relied upon the injunctive relief clause and said this is a reason we have irreparable harm. There's an injunctive relief clause. In fact, that may have been a reason they gave such short shrift to any other arguments of irreparable harm that the court found was lacking and speculative and did not clearly err in so doing. Well, if you've presented the question. And you believe the court reached a decisional error, you do not raise a new argument on appeal by by by fleshing that out, right? As a general principle, right? And that's really what they're arguing here, right? That they presented the injunction relief clause in context that they asked the argument. The argument was made. Judge Boo didn't buy it. And then their argument here in advance now is that here's why Judge Boo didn't buy it and why he's wrong. They can do that, can't they? That's not a new argument. No, that's not a new argument. And that's if they want to say that the court. What I take issue with is them saying that the court gave no weight to the provision. And the reason the only reason they say the court gave no weight to the provision is because he didn't grant the injunction. Because he said it was his words were not dispositive, right? Those are two words for you. Yes. And the district court absolutely provided the correct legal standard in giving non-dispositive weight to the agreement. And the district court was absolutely following cases like Brideau and Dominion video in refusing to grant the injunction, given that he had made findings that all the other arguments about irreparable harm were unconvincing or speculative. For instance, because any economic loss from this handful of customers could be readily calculable under the contract and thus was recoverable. Or because on reputation, it was speculative to think that a loss of reputation was imminent between now and trial, given the nature of these platforms and that they were commerce platforms. Or that any claim of price erosion was speculative. Because RMS's own expert equivocated and said things like it may occur, it could occur. He relied sort of on general principles. And you had our expert, commerce's expert, pointing out the opposite, saying it's likely. And the fact that price erosion had not occurred at all nine months into the case, the court was justified to take that into account as one reason, among others, that he thought it was speculative to think that price erosion would occur from then to trial. But he always was considering the right legal issue, which is how likely or not price erosion would be before trial, whether it would be irreparable. And he did not clearly err in saying RMS failed to meet its burden, that price erosion would occur. Or if it did, it would be irreparable. Again, because if RMS lowers its prices on a price schedule, that's pretty calculable. So again and again, the court made these factual findings about the deficiencies of RMS's irreparable harm argument. And those findings were correct. They're supported by evidence in the record. And they do not represent clear error. And thus, the court didn't abuse its discretion in failing to grant the injunction. I'll close by making a couple brief comments on the balance of the hardships. Now, the court noted that the balance of the hardships did not favor RMS, but rather commerce, because the harm to commerce of granting the injunction would have been the precipitous removal of commerce's customers from their medical billing platform that are using the commerce platform. And we're talking about doctors and large hospitals and doctors that use this software. That was undisputed and absolutely correct that that would be a harm of the injunction. When he balanced that harm against the harm to RMS of not issuing an injunction, he noted that commerce had stopped placing new customers on the commerce platform. Instead, they were using a third-party platform. The court was entitled to come to that correct factual conclusion in considering what the effect of not granting an injunction would be to RMS going forward. I can't conceive of a scenario where a district court is instructed that it has to come to a counterfactual conclusion. Now, RMS had argued that much of their irreparable harm stemmed from new customers coming onto the platform, as did RMS's expert. Now, that happened to be factually wrong, but the district court was allowed to note that that's factually wrong. He certainly didn't have to pretend that it wasn't wrong in some fashion. So, the court also did not abuse its discretion at all with respect or clearly error with respect to the findings it made when it was balancing the hardships and found that the balance of hardships did not favor RMS. I see I only have a minute left. So, unless your honors have further questions, I'll cede the remainder of my time. Thank you. Thank you. Mr. Love, rebuttal. Thank you. I want to start with where we made this argument below and to be clear on what the record is. Our brief portion that's relevant is at the appellant's appendix 170 to 171. We did argue the injunctive relief clause. We did argue that it was entitled to significant weight. It was the lead argument, as I said. Counsel certainly had the opportunity to point you to anywhere in the district court's opinion where he actually gave the injunctive relief clause any weight at all. Well, he says not dispositive. Don't you think it's like when you put negatives together, it means something? The problem is after those words appear, the injunctive relief clause disappears and there's nothing that suggests that what the cases require. The bolstering augmenting is, I believe, the word that's used in the case they rely on the district court case. None of that takes place. It is all an analysis that takes place divorced of the injunctive relief clause. If you'd used a single word bolster, you both quote that a lot. Would it be okay? It would have to be part of some analysis where he says even with the additional weight of the injunctive relief clause, somehow this isn't sufficient. What we've tried to explain is that the evidence that the district court had in front of it, there's concrete undisputed evidence of harm, customers that have been moved away. Now, they're arguing about whether or not that can be quantified, but the parties contract. How do you respond to that? That it's readily and easily calculable actual damages. Sure. And this is addressed by our expert, but commonly comes up in a lost market share scenario. Lost market share does get recognized as a basis for reparable harm because of the disruption to customer relationships and the inability to recover it. It is certainly true that you could look at for customer up to trial, we had X months. The customer relationship to the forward facing entity is commerce. It is sometimes. That is presented by counsel as a flatly true statement. It's not the case for these large hospital systems. There was interaction that involved both commerce and RMS. There are certainly some smaller providers who were not aware that RMS was the technology provider. But the fact of the matter is these customers were using one platform and then commerce was attempting to essentially pull the rug out from under them and replace it with their platform for customers who had the previous relationship with RMS. Regaining them on our platform is going to be enormously difficult, especially with the amount of time that has passed since we saw this injunctive relief. I want to take the last couple of seconds on that balance of harms point. What we have from them is just lawyer arguments and a representation that there may be not going to do anything more right now. And their witness at appendix 852539194 admitted this is a pause they could reverse at any time. There's nothing stopping them from in reinstituting that harm. Very well. Court appreciates both counsel's appearance and argument today. Case will be submitted and we'll issue an opinion in due course. You may be excused.